UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x

IN RE:                                                          :
                                                                :
STANDARD & POOR'S RATING AGENCY LITIGATION :
                                                                :     13-MD-2446 (JMF)
                                                                :
-----------------------------------------------------------------------x
*This Document Relates To The Following Actions:*      :
-----------------------------------------------------------------------x
ARIZONA ex rel. HORNE,                                          :
                                                                :
                               Plaintiff,                       :
                       -v-                                      :     1:13 Civ. 4022 (JMF)
                                                                :
MCGRAW-HILL COS., INC., et al.,                                 :
                                                                :
                               Defendants.                      :
-----------------------------------------------------------------------x
ARKANSAS ex rel. MCDANIEL,                                      :
                                                                :
                               Plaintiff,                       :
                       -v-                                      :     1:13 Civ. 4013 (JMF)
                                                                :
MCGRAW-HILL COS., INC., et al.,                                 :
                                                                :
                               Defendants.                      :
-----------------------------------------------------------------------x
COLORADO ex rel. SUTHERS,                                       :
                                                                :
                               Plaintiff,                       :
                       -v-                                      :     1:13 Civ. 4010 (JMF)
                                                                :
MCGRAW-HILL COS., INC., et al.,                                 :
                                                                :
                               Defendants.                      :
-----------------------------------------------------------------------x
DELAWARE,                                                       :
                                                                :
                               Plaintiff,                       :
                       -v-                                      :     1:13 Civ. 4050 (JMF)
                                                                :
MCGRAW-HILL COS., INC., et al.,                                 :
                                                                :
                               Defendants.                      :
-----------------------------------------------------------------------x

```
------------------------------------------------------------------x
IDAHO ex rel. WASDEN,                          :
                                               :
                        Plaintiff,             :
            -v-                                :        1:13 Civ. 4045 (JMF)
                                               :
MCGRAW-HILL COS., INC., et al.,                :
                                               :
                        Defendants.            :
------------------------------------------------------------------x
INDIANA ex rel. NAYLOR,                        :
                                               :
                        Plaintiff,             :
            -v-                                :
                                               :        1:13 Civ. 5401 (JMF)
MCGRAW-HILL COS., INC., et al.,                :
                                               :
                        Defendants.            :
------------------------------------------------------------------x
IOWA ex rel. MILLER,                           :
                                               :
                        Plaintiff,             :
            -v-                                :        1:13 Civ. 4046 (JMF)
                                               :
MCGRAW-HILL COS., INC., et al.,                :
                                               :
                        Defendants.            :
------------------------------------------------------------------x
MAINE,                                         :
                                               :
                        Plaintiff,             :
            -v-                                :        1:13 Civ. 3969 (JMF)
                                               :
MCGRAW-HILL COS., INC., et al.,                :
                                               :
                        Defendants.            :
------------------------------------------------------------------x
MISSISSIPPI ex rel. HOOD,                      :
                                               :
                        Plaintiff,             :
            -v-                                :        1:13 Civ. 4049 (JMF)
                                               :
MCGRAW-HILL COS., INC., et al.,                :
                                               :
                        Defendants.            :
------------------------------------------------------------------x
```

ii

```
------------------------------------------------------------x
MISSOURI ex rel. KOSTER,                        :
                                                :
                          Plaintiff,            :
              -v-                               :    1:13 Civ. 4044 (JMF)
                                                :
MCGRAW-HILL COS., INC., et al.,                 :
                                                :
                          Defendants.           :
------------------------------------------------------------x
NORTH CAROLINA ex rel. COOPER,                  :
                                                :
                          Plaintiff,            :
              -v-                               :    1:13 Civ. 4047 (JMF)
                                                :
MCGRAW-HILL COS., INC., et al.,                 :
                                                :
                          Defendants.           :
------------------------------------------------------------x
PENNSYLVANIA ex rel. KANE,                      :
                                                :
                          Plaintiff,            :
              -v-                               :    1:13 Civ. 4048 (JMF)
                                                :
MCGRAW-HILL COS., INC., et al.,                 :
                                                :
                          Defendants.           :
------------------------------------------------------------x
SOUTH CAROLINA ex rel. WILSON,                  :
                                                :
                          Plaintiff,            :
              -v-                               :    1:13 Civ. 4051 (JMF)
                                                :
MCGRAW-HILL COS., INC., et al.,                 :
                                                :
                          Defendants.           :
------------------------------------------------------------x
TENNESSEE ex rel. COOPER,                       :
                                                :
                          Plaintiff,            :
              -v-                               :    1:13 Civ. 4098 (JMF)
                                                :
MCGRAW-HILL COS., INC., et al.,                 :
                                                :
                          Defendants.           :
------------------------------------------------------------x
```

```
------------------------------------------------------------------------x
WASHINGTON,                                        :
                                                   :
                            Plaintiff,             :
              -v-                                  :        1:13 Civ. 4043 (JMF)
                                                   :
MCGRAW-HILL COS., INC., et al.,                    :
                                                   :
                            Defendants.            :
------------------------------------------------------------------------x
```

## CONSOLIDATED BRIEF IN SUPPORT OF
## PLAINTIFF STATES' MOTIONS TO REMAND

OFFICE OF THE TENNESSEE ATTORNEY GENERAL
Olha N.M. Rybakoff (TN BPR No. 24254)
Jeffrey L. Hill (TN BPR No. 16731)
Jennifer E. Peacock (TN BPR No. 22227)
CONSUMER ADVOCATE AND PROTECTION DIVISION
425 5th Avenue North
P.O. Box 20207
Nashville, Tennessee 37202-0207
Telephone: (615) 532-2590
Fax: (615) 532-2910
Email: olha.rybakoff@ag.tn.gov
Email: jeff.hill@ag.tn.gov
Email: jennifer.peacock@ag.tn.gov

*Lead Counsel for Moving Plaintiff States Arizona,
Arkansas, Colorado, Delaware, Idaho, Indiana,
Iowa, Maine, Mississippi, Missouri, North Carolina,
Pennsylvania, South Carolina, Tennessee, and
Washington*

DATED: August 2, 2013

iv

## TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................1

II.  SUMMARY OF ARGUMENT ...............................................................................2

III.  BACKGROUND ......................................................................................................2

IV.  NATURE OF THE STATES' ENFORCEMENT ACTIONS.............................3

V.  LEGAL STANDARD..............................................................................................6

VI.  ARGUMENT ............................................................................................................8

    A.  S&P HAS FAILED TO DEMONSTRATE THAT THE STATES' ENFORCEMENT ACTIONS FALL WITHIN *GRABLE'S* NARROW EXCEPTION TO THE WELL-PLEADED COMPLAINT RULE......................8

        1.  THE STATES' WELL-PLEADED COMPLAINTS DO NOT NECESSARILY RAISE FEDERAL ISSUES........................................12

            a.  No federal issues are necessarily raised by S&P's asserted defenses.....................................................................................12

            b.  S&P's First Amendment and CRARA preemption arguments are nothing more than defenses to the States' claims, which cannot serve as bases for federal jurisdiction .........15

            c.  S&P's First Amendment and CRARA preemption arguments have already been rejected by other courts .................16

        2.  THE STATES' WELL-PLEADED COMPLAINTS DO NOT RAISE SUBSTANTIAL FEDERAL ISSUES ...................................................18

            a.  S&P's CRARA arguments are nothing more than a defense to the States' claims, not a substantial basis for federal jurisdiction ................................................................................19

                 i.  A plain reading of CRARA shows that no preemption exists sufficient to create federal jurisdiction .......................................................................19

                 ii.  Courts have already concluded that CRARA preemption does not apply to these enforcement actions ..............................................................................22

b.    S&P's First Amendment defense does not raise a
      substantial federal issue ...................................................................24

c.    Substantiality does not emerge merely because multiple
      States filed enforcement actions ....................................................24

3.    PRINCIPLES OF COMITY FAVOR STATE COURTS
      INTERPRETING STATE LAW ENFORCEMENT PROCEEDINGS
      IN STATE COURTS ...............................................................................26

B.    S&P WAIVED THE RIGHT REMOVAL OF NORTH CAROLINA'S CASE ......29

C.    COSTS AND ATTORNEYS' FEES SHOULD BE AWARDED TO THE
      STATES BECAUSE THERE IS NO OBJECTIVELY REASONABLE
      BASIS FOR S&P's REMOVAL OF THE STATES' ENFORCEMENT
      ACTIONS ...........................................................................................................31

VII.   CONCLUSION.............................................................................................................32

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                                                                                      <u>PAGE</u>

*Anschutz Corp. v. Merrill Lynch and Co. Inc.*,
    785 F. Supp. 2d 799 (N.D. Cal. 2011) ............................................................................22

*Bennett v. Southwest Airlines Co.*,
    484 F.3d 907 (7th Cir. 2007) .........................................................................................23

*Bolger v. Youngs Drug Prods. Corp.*,
    463 U.S. 60 (1983)..........................................................................................................24

*California v. ARC Am. Corp.*,
    490 U.S. 93 (1989)..........................................................................................................11

*California v. H&R Block, Inc.*,
    No. C 06-2058 SC, 2006 WL 2669045 (N.D. Cal. Sept. 18, 2006) ..................................6

*Carr v. Axelrod*,
    798 F. Supp. 168 (S.D.N.Y. 1992) .................................................................................16

*Caterpillar Inc. v. Williams*,
    482 U.S. 386 (1987)...................................................................................7, 12, 13, 21

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York*,
    447 U.S. 557 (1980).......................................................................................................24

*Chicago Tribune Co. v. Board of Trs. of Univ. of Illinois*,
    680 F.3d 1001 (7th Cir. 2012) .......................................................................................14

*Citigroup, Inc. v. Wachovia Corp.*,
    613 F. Supp. 2d 485 (S.D.N.Y. 2009).............................................................................16

*City of New York v. Permanent Mission of India to the United Nations*,
    618 F.3d 172, 193 (2d Cir. 2010).....................................................................................20

*Connecticut v. McGraw-Hill Cos.*,
    No. HHDCV106008838S (Conn. Super. Ct. May 10, 2012) ..........................................23

*Connecticut v. Moody's Corp.*,
    No. X04HHDCV106008836S, 2012 WL 2149408
    (Conn. Super. Ct. May 10, 2012)........................................................................ 17, 22-23

*Connecticut v. McGraw Hill Cos. Inc.*,
  No. 3:13-cv-311 (SRU), 2013 WL 1759864 (D. Conn. Apr. 24, 2013)...........17,18, 25, 32

*Covenant Equip. Corp. v. Forklift Pro, Inc.*,
  No. 07 CVS 21932, 2008 WL 1945973 (N.C. Super. Ct. May 1, 2008).........................30

*Cuomo v. Dreamland Amusements, Inc.*,
  Nos. 08 Civ. 7100(JGK), 08 Civ. 6321(JGK), 2008 WL 4369270
  (S.D.N.Y. Sep. 22, 2008)................................................................................19

*Cuomo v. Clearing House Ass'n*,
  557 U.S. 519 (2009)......................................................................................5

*Empire Healthchoice Assurance, Inc. v. McVeigh*,
  547 U.S. 677 (2006).....................................................................................8, 9

*Federal Ins. Co. v. Tyco Int'l Ltd.*,
  422 F.Supp. 2d 357 (S.D.N.Y. 2006)................................................................6

*Franchise Tax Bd. of the State of Cal. v. Constr. Laborers Vacation*
  *Trust for S. Cal.*, 463 U.S. 1 (1983)......................................................7, 13, 26, 28

*Genesee County Employees' Ret. Sys. v. Thornburg Mortg. Sec. Trust*,
  825 F. Supp. 2d 1082 (D.N.M. 2011) ..............................................................22

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
  545 U.S. 308 (2005)................................................................................ *passim*

*Greenwich Fin. Servs. Distressed Mortg. Fund 3, LLC v. Countrywide Fin. Corp.*,
  654 F. Supp. 2d 192 (S.D.N.Y. 2009).........................................................7-8, 13, 16, 32

*Grimo v. Blue Cross/Blue Shield of Vermont*,
  34 F.3d 148 (2d Cir. 1994)............................................................................6

*Grubb v. Donegal Mut. Ins. Co.*,
  935 F.2d 57 (4th Cir. 1991) ...........................................................................29

*Gully v. First Nat'l Bank in Meridian*,
  299 U.S. 109 (1936)..............................................................................13, 19, 23

*Gunn v. Minton*,
  ___ U.S. ___, 133 S. Ct. 1059 (2013)...............................................................8-9, 11, 14

*Illinois v. McGraw-Hill Cos., Inc.*,
  No. 13 C 1725, 2013 WL 1874279 (N.D. Ill. May 2, 2013) ....................14, 16, 18, 23, 25

viii

*Illinois v. McGraw-Hill Cos., Inc.*,
    No. 12 CH 0235, 2012 WL 5440768 (Ill. Cir. Ct. Nov. 7, 2012)................................17, 23

*Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.*,
    538 U.S. 600 (2003)...........................................................................................................5, 24

*In re Avandia Mktg. Sales Practices and Prods. Liab. Litig.*,
    Nos. 11-2915, 11-3521, 2012 WL 1137097 (E.D. Pa. Apr. 4, 2012).........................24-25

*In re Countrywide Fin. Corp. Mortg. Mktg. and Sales Practices Litig.*,
    Nos. 08md1988 DMS (LSP), 08cv1903 DMS (LSP),
    2008 WL 5450351 (S.D. Cal. Dec. 30, 2008)..................................................................25

*In re: Oxycontin Antitrust Litig.*,
    821 F. Supp. 2d 591 (S.D.N.Y. 2011).........................................................................7, 13

*In re: Vioxx Prods. Liab. Litig.*,
    843 F. Supp. 2d 654 (E.D. La. 2012)...............................................................................27

*Ins. Co. of the State of Pa. v. Waterfield*,
    371 F. Supp. 2d 146 (D. Conn. 2005).........................................................................31-32

*Isaacs v. Group Health, Inc.*,
    668 F. Supp. 306 (S.D.N.Y. 1987)...................................................................................29

*Johnston v. St. Paul Fire & Marine Ins. Co.*,
    134 F. Supp. 2d 879 (E.D. Mich. 2001).........................................................................28

*MG Bldg. Materials, Ltd. v. Paychex, Inc.*,
    841 F. Supp. 2d 740 (W.D.N.Y. 2012)...........................................................................29

*Marcus v. AT&T Corp.*,
    138 F.3d 46 (2d Cir. 1998) .............................................................................................12

*Martin v. Franklin Capital Corp.*,
    546 U.S. 132 (2005)........................................................................................................31

*Merrell Dow Pharm. Inc. v. Thompson*,
    478 U.S. 804 (1986)......................................................................................8, 11, 13, 19

*Morgan Guar. Trust Co. of New York v. Republic of Palau*,
    971 F.2d 917 (2d Cir. 1992)...........................................................................................32

*Nevada v. Bank of Am. Corp.*,
    672 F.3d 661 (9th Cir. 2012) .........................................................................................27

ix

*New York v. Dell, Inc.*,
   514 F. Supp. 2d 397 (N.D.N.Y. 2007) ............................................................26

*New York v. First Am. Corp.*,
   No. 07 Civ. 10397(LTS)(HP), 2008 WL 2676618 (S.D.N.Y. July 8, 2008).............. 14-15

*New York v. Gen. Motors Corp.*,
   547 F. Supp. 703 (S.D.N.Y. 1982)..................................................................4

*New York v. Shinnecock Indian Nation*,
   686 F.3d 133 (2d Cir. 2012) .............................................................9, 12, 13

*Ormet Corp. v. Ohio Power Co.*,
   98 F.3d 799 (4th Cir. 1996) .......................................................................28

*Ortiz v. City of New York*,
   No. 13 Civ. 136 (JMF), 2013 WL 2413724 (S.D.N.Y. June 4, 2013).........................6, 7

*Pampillonia v. RJR Nabisco, Inc.*,
   138 F.3d 459 (2d Cir. 1998).........................................................................6

*Pennzoil Co. v. Texaco Inc.*,
   481 U.S. 1 (1987)......................................................................................28

*Purdue Pharma L.P. v. Kentucky*,
   704 F.3d 208 (2d Cir. 2013).......................................................................6, 7

*Scott v. Ass'n for Childbirth at Home Int'l*,
   430 N.E.2d 1012, 1016 (Ill. 1981) ..............................................................17

*State ex rel. Miller v. Baxter Chrysler Plymouth, Inc.*,
   456 N.W.2d 371 (Iowa 1990) ...................................................................4, 5

*State ex rel. Miller v. Grodzinsky*,
   571 N.W.2d 1 (Iowa 1997) ...........................................................................4

*State ex rel. Miller v. Hydro Mag, Ltd.*,
   436 N.W.2d 617 (Iowa 1989) ...................................................................4-5

*State ex rel. Miller v. Internal Energy Mgmt. Corp.*,
   324 N.W.2d 707 (Iowa 1982) .......................................................................5

*State ex rel. Miller v. Nat'l Dietary Research, Inc.*,
   454 N.W.2d 820 (Iowa 1990) .......................................................................4

*State ex rel. Miller v. New Womyn, Inc.*,
    679 N.W.2d 593 (Iowa 2004) .......................................................................4

*State ex rel. Miller v. Pace*,
    677 N.W.2d 761 (Iowa 2004) .......................................................................4

*State ex rel. Miller v. Publishers Clearing House, Inc.*,
    633 N.W.2d 732 (Iowa 2001) .......................................................................4

*State ex rel. Miller v. Santa Rosa Sales and Marketing, Inc.*,
    475 N.W.2d 210 (Iowa 1991) .......................................................................4

*State ex rel. Miller v. Smokers Warehouse Corp.*,
    737 N.W.2d 107 (Iowa 2007) .......................................................................4

*State ex rel. Miller v. Vertrue, Inc.*,
    No. 11-0449, ___ N.W.2d ___, 2013 WL 3377866 (Iowa July 5, 2013) ..............................4

*Sullivan v. Am. Airlines, Inc.*,
    424 F.3d 267 (2d. Cir. 2005).................................................................19, 21

*Templeton Bd. of Sewer Comm'rs v. Am. Tissue Mills of Mass., Inc.*,
    352 F.3d 33 (1st Cir. 2003)...........................................................................28

*United States v. McGraw-Hill Cos., Inc.*,
    No. CV 13-0779 DOC (JCGx), 2013 WL 3762259 (C.D. Cal. July 16, 2013).....................3

*United States v. Dish Network, LLC*,
    No. 09-3073, 2013 WL 1749930 (C.D. Ill., Apr. 24, 2013) ................................................5

*Va. Beach Resort & Conf. Center Hotel Ass'n Condo. v. Certain Interested*
    *Underwriters at Lloyd's*, 812 F. Supp. 2d 762 (E.D. Va. 2011)........................................31

*Veneruso v. Mount Vernon Neighborhood Health Center*,
    No. 09–CV–8703 (KMK), -- F.Supp.2d --, 2013 WL 1187445
    (S.D.N.Y. March 22, 2013).................................................................... *passim*

*West Virginia ex. rel. McGraw v. CVS Pharmacy, Inc.*,
    646 F.3d 169 (4th Cir. 2011).......................................................................27

*West Virginia ex. rel. McGraw v. JPMorgan Chase & Co.*,
    842 F. Supp. 2d 984 (S.D.W. Va. 2012) ................................................13, 19, 27

*Westwood v. Fronk*,
    177 F. Supp. 2d 536 (N.D. W. Va. 2001) .........................................................29

xi

*Yusefzadeh v. Nelson, Mullins, Riley & Scarborough, LLP*,
    365 F.3d 1244 (11th Cir. 2004) ...................................................................29

*Zerafa v. Montefiore Hosp. Hous. Co. Inc.*,
    403 F. Supp. 2d 320 (S.D.N.Y. 2005).......................................................... 6-7

## STATUTES

12 U.S.C. § 1833a ...........................................................................................3

15 U.S.C. § 78o-7. .......................................................................................20

15 U.S.C. § 78o-7 *et seq.* ..............................................................................3

15 U.S.C. § 78o-7(c)(2) ...............................................................................20

15 U.S.C. § 78o-7(i)(2) ................................................................................22

15 U.S.C § 78o-7(o)(2) ........................................................... 11-12, 21, 22, 29

28 U.S.C. § 1331 ...................................................................................2, 7, 12

28 U.S.C. § 1441 ............................................................................................6

28 U.S.C. § 1447(c) ..............................................................................7, 31, 32

Missouri Securities Law § 409.5-501(2), RSMo .............................................4

N.C. Gen. Stat. § 7A-45.4(b) (2013)................................................................2

S.C. Code § 35-1-501...................................................................................4

## OTHER AUTHORITIES

Sarika Gangar, *S&P Won't Employ First Amendment Defense in U.S. Ratings Lawsuit*,
Bloomberg.com (Feb. 5, 2013), http://www.bloomberg.com/news/2013-02-05/s-p-won-t-
employ-first-amendment-defense-in-u-s-ratings-lawsuit.html ......................16

Statement of Rep. Kanjorski, Cong. Rec. H7569 (Sept. 27, 2006) ................2

## I.   INTRODUCTION

The sovereign Plaintiff States of Arizona, Arkansas, Colorado, Delaware, Idaho, Indiana, Iowa, Maine, Mississippi, Missouri, North Carolina, Pennsylvania, South Carolina, Tennessee, and Washington ("States") respectfully submit this consolidated brief in support of their motions to remand the civil law enforcement actions each State filed against Defendants The McGraw-Hill Companies, Inc. and Standard & Poor's Financial Services LLC (collectively "S&P") to their respective state courts.

The States' enforcement actions should all be remanded to their respective state courts because there is no recognized basis for federal jurisdiction over the States' claims.[1]  The States, in seeking relief for S&P's persistent false characterizations of its own ratings services, are pursuing their sovereign interests in an area of traditional state authority.  S&P would have this Court ignore state sovereignty by allowing S&P to remove multiple state law enforcement proceedings to federal court from the state courts in which they were filed.  S&P bases this extraordinary and unprecedented request on the assertion that its preemption and First Amendment defenses, when coupled with defending multiple State enforcement actions, take on emergent properties which give rise to federal jurisdiction.  S&P's theories are unsupported, novel, and should be rejected on their face.[2]  S&P fails to present any objectively reasonable basis for removal

---

[1]   Mississippi will separately brief the lack of timeliness for S&P's March 6, 2013 Supplemental Notice of Removal, upon which Connecticut and Illinois have already prevailed, and the lack of jurisdiction under diversity and the Class Action Fairness Act of 2005 ("CAFA") under which S&P and co-Defendants Moody's Corporation and Moody's Investors Service, Inc. removed Mississippi's state action in 2011.  Connecticut has also already prevailed on CAFA and lack of diversity jurisdiction grounds.

[2]   S&P has itself described its jurisdictional issue as "novel." (*See* Excerpt of Transcript of Transfer Hearing before the JPML (May 30, 2013), at p. 6, ln. 13 (attached as Exhibit A)).

under settled law where the States are pursuing their sovereign interests in an area of traditional state authority.

## II.     SUMMARY OF ARGUMENT

The States' enforcement actions should all be remanded to their respective state courts for lack of federal court jurisdiction.  S&P's assertion that this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 under the narrow exception to the well-pleaded complaint rule set forth in *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), fails for the following reasons:

***First***, the States' well-pleaded complaints raise only state law claims which arise exclusively under state law.  No federal claims are asserted or necessarily raised.  The remedies sought by the States are not predicated on the interpretation or analysis of any federal law other than the federal issues which might be raised by S&P as affirmative defenses.

***Second***, the purported federal issues raised by S&P are not substantial.  S&P's preemption and First Amendment arguments are nothing more than federal defenses to the States' claims, which cannot independently provide a basis for federal jurisdiction.  Additionally, substantiality is not met merely because multiple States brought enforcement actions against S&P.

***Third***, comity principles support this Court declining jurisdiction and remanding the States' enforcement actions back to their respective state courts.  Considerations of state sovereignty and the balance of federal and state judicial responsibilities clearly favor state courts interpreting state law in the enforcement proceedings brought by the sovereign States.

## III.     BACKGROUND

The background of these proceedings was previously set forth in the States' June 28, 2013 letter to the Court and will not be repeated here at length.  (Docket No. 11).  In short, S&P has

engaged in repeated removal efforts since March 2010, when Connecticut brought the first State enforcement action.  Although S&P relies exclusively on the First Amendment and the Credit Rating Agency Reform Act of 2006 ("CRARA"), 15 U.S.C. § 78o-7 *et seq*., for removal in these enforcement actions, these federal question grounds were noticeably absent from S&P's first of two unsuccessful efforts to remove the Connecticut action and in its first notice of removal for the Mississippi action.

S&P has yet to convince any court that its present grounds for removal or its federal defenses have any merit in the context of a state deceptive trade practice enforcement action.  In addition to the Connecticut and Illinois state courts denying S&P's motions to dismiss, a federal court has recently rejected S&P's attempt to dismiss the enforcement action brought by the United States Department of Justice under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1833a.  *United States v. McGraw-Hill Cos., Inc.*, No. CV 13-0779 DOC (JCGx), 2013 WL 3762259 (C.D. Cal. July 16, 2013) (Order and Memorandum Opinion).  Nevertheless, S&P continues a course of jurisdictional maneuvering that has delayed substantive proceedings in the pre-2013 State enforcement actions for three years, and, by the time of the October 4, 2013 hearing here, will have delayed these State enforcement actions for eight months.

## IV.  NATURE OF THE STATES' ENFORCEMENT ACTIONS

The States' enforcement actions brought claims under their respective state deceptive trade practice laws which provide state attorneys general with a means of addressing deceptive conduct

in their respective marketplaces.[3]  Consistent with the traditional exercise of state police powers, these laws empower state authorities to bring civil law enforcement proceedings in their respective state courts seeking injunctive relief to halt deceptive practices, as well as equitable and remedial monetary relief.

The States are suing to enforce laws of general application that set forth basic anti-deception standards.  These laws serve important state interests by protecting consumers from false and misleading marketplace conduct.  *See, e.g., New York v. Gen. Motors Corp.*, 547 F. Supp. 703, 707 (S.D.N.Y. 1982) ("The focus is on obtaining wide-ranging injunctive relief designed to vindicate the State's quasi-sovereign interest in securing an honest marketplace for all consumers.").[4]

Deceptive trade practice enforcement proceedings often focus on commercial speech, typically in the form of misrepresentations or false advertising.[5]  Routine state efforts to ensure,

---

[3]  Missouri and South Carolina asserted state securities claims in addition to their deceptive trade practice claims.  Indiana, which joined these consolidated proceedings on August 1, 2013, filed suit based solely on its state securities laws through its Securities Commissioner.

[4]  State securities laws similarly prohibit deceptive conduct and exist alongside federal laws. *See*, *e.g*., Missouri Securities Law § 409.5-501(2), RSMo (stating it is unlawful to make "an untrue statement of a material fact" in connection with the offer, sale, or purchase of a security); South Carolina Uniform Securities Act of 2005, S.C. Code § 35-1-501 (stating it is unlawful to make "an untrue statement of a material fact" in connection with the offer or sale of a security).

[5]  For instance, Iowa alone has the following reported cases on this issue: *State ex rel. Miller v. Vertrue, Inc.*, No. 11-0449, --- N.W.2d ---, 2013 WL 3377866, at *1 (Iowa July 5, 2013); *State ex rel. Miller v. Smokers Warehouse Corp.*, 737 N.W.2d 107, 108 (Iowa 2007); *State ex rel. Miller v. New Womyn, Inc.*, 679 N.W.2d 593, 594 (Iowa 2004); *State ex rel. Miller v. Pace*, 677 N.W.2d 761, 770 (Iowa 2004); *State ex rel. Miller v. Publishers Clearing House, Inc.*, 633 N.W.2d 732, 734 (Iowa 2001); *State ex rel. Miller v. Grodzinsky*, 571 N.W.2d 1, 2 (Iowa 1997); *State ex rel. Miller v. Santa Rosa Sales and Marketing, Inc.*, 475 N.W.2d 210, 213 (Iowa 1991); *State ex rel. Miller v. Nat'l Dietary Research, Inc.*, 454 N.W.2d 820, 821-22 (Iowa 1990); *State ex rel. Miller v. Baxter Chrysler Plymouth, Inc.*, 456 N.W.2d 371, 373 (Iowa 1990); *State ex rel. Miller v. Hydro Mag, Ltd.*, 436

for example, that a car dealer's ads are not deceptive, *see, e.g.*, *State ex rel. Miller v. Baxter Chrysler Plymouth, Inc.*, 456 N.W.2d 371, 373 (Iowa 1990), implicate the boundary between protected speech and unprotected deceptive speech.  *See also Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 612 (2003) ("Like other forms of public deception, fraudulent charitable solicitation is unprotected speech.").

The common core of the States' enforcement proceedings is deceptive conduct, which often focuses on facets of the marketplace that are also subject to federal regulation.  State deceptive trade practice laws interface with federal authority in a number of ways.  Thus, state deceptive trade practice cases have addressed areas such as telemarketing subject to the Federal Trade Commission regulation, health-related marketing subject to the Food and Drug Administration regulation, banks subject to the Office of the Comptroller of the Currency regulation, and communications subject to the Federal Communications Commission regulation.[6]

The States allege S&P misrepresented its independence and objectivity regarding its credit rating services.  The States brought these enforcement actions for the simple purpose of addressing this deception.  S&P, however, raises implausible defenses and argues that there is a risk of inconsistent regulation in order to justify removal.  These arguments are disingenuous and ignore the basic purpose of these enforcement actions, which are at the heart of state sovereignty.

---

N.W.2d 617, 618 (Iowa 1989); *State ex rel. Miller v. Internal Energy Mnemt. Corp.*, 324 N.W.2d 707, 709 (Iowa 1982).

[6] *See, e.g., United States v. Dish Network, LLC*, No. 09-3073, 2013 WL 1749930 (C.D. Ill., Apr. 24, 2013) (The U.S. and four states brought an enforcement action based on violations of the FTC's Telemarketing Sales Rule and state prohibitions on unsolicited phone calls and the Do Not Call Registry); *Cuomo v. Clearing House Ass'n*, 557 U.S. 519 (2009) (the Supreme Court held that nationally-chartered banks extensively regulated under National Bank Act are still subject to state law and State Attorneys General enforcement actions).

The States seek only to require that S&P complies with their state laws prohibiting deceptive practices, which is nothing more than all marketplace participants are required to do.

## V.    LEGAL STANDARD

"In evaluating the propriety of a removal, courts start with the baseline principle that federal courts are courts of limited jurisdiction." *Veneruso v. Mount Vernon Neighborhood Health Center*, No. 09–CV–8703 (KMK), -- F.Supp.2d --, 2013 WL 1187445, at *2 (S.D.N.Y. March 22, 2013).  Because of their limited jurisdiction, federal courts "lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013) (quoting *Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont,* 565 F.3d 56, 62 (2d Cir. 2009)); *Ortiz v. City of New York*, No. 13 Civ. 136 (JMF), 2013 WL 2413724, at *1 (S.D.N.Y. June 4, 2013) (same). Accordingly, "removal jurisdiction exists in a given case only when that jurisdiction is expressly conferred on the courts by Congress." *Federal Ins. Co. v. Tyco Int'l Ltd*., 422 F. Supp. 2d 357, 367 (S.D.N.Y. 2006) (citation omitted).

The party asserting federal jurisdiction bears "the burden of demonstrating the propriety of removal." *Grimo v. Blue Cross/Blue Shield of Vermont*, 34 F.3d 148, 151 (2d Cir. 1994). "The bar is further raised when the removal in question is of an action brought originally by a State in a State court." *California v. H&R Block, Inc*., No. C 06-2058 SC, 2006 WL 2669045, at *2 (N.D. Cal. Sep. 18, 2006).  In ruling on a motion to remand, "all factual and legal issues must be resolved in favor of the plaintiff." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998).

Removal of civil actions derives solely from 28 U.S.C. § 1441, which is "strictly construed inasmuch as it implicates significant federalism concerns and abridges the deference

courts generally give to a plaintiff's choice of forum." *Zerafa v. Montefiore Hosp. Hous. Co. Inc.*, 403 F. Supp. 2d 320, 324 (S.D.N.Y. 2005). This strict construction is based, in part, on a concern for state sovereignty. "However, '[i]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability.'" *Purdue Pharma*, 704 F.3d at 213 (quoting *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)).

The propriety of removal in this action depends on whether jurisdiction "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. If the court lacks subject matter jurisdiction, the case must be remanded. 28 U.S.C. § 1447(c); *see also In re: Oxycontin Antitrust Litig.*, 821 F. Supp. 2d 591, 595 (S.D.N.Y. 2011) ("If the removing party cannot establish its right to removal by competent proof, the removal is improper, and the district court must remand the case to the court in which it was filed.") (citations omitted). "[E]rring on the side of remand 'makes good sense,' as it removes any risk of the Court of Appeals concluding, after the case has proceeded to final judgment, that this Court lacked jurisdiction and vacating the judgment on that basis." *Ortiz*, 2013 WL 2413724, at *5 (internal citation omitted). The Supreme Court has confirmed:

> [I]t is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.

*Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) (citing *Franchise Tax Bd. of the State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 12 (1983)); *accord Greenwich Fin. Servs. Distressed Mortg. Fund 3, LLC v. Countrywide Fin. Corp.*, 654 F. Supp.

2d 192, 203 (S.D.N.Y. 2009) ("A federal defense has never been sufficient for federal question jurisdiction.").

In evaluating whether federal question jurisdiction exists, "[t]he 'mere presence' of a federal issue in a state cause of action does not confer federal jurisdiction."  *Veneruso*, 2013 WL 1187445, at *6 (quoting *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 813 (1986)). "Nor is the mere assertion of a federal interest sufficient to warrant the exercise of federal jurisdiction." *Id.* (citing *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701 (2006)).

## VI.    ARGUMENT

### A.    S&P HAS FAILED TO DEMONSTRATE THAT THE STATES' ENFORCEMENT ACTIONS FALL WITHIN *GRABLE'S* NARROW EXCEPTION TO THE WELL-PLEADED COMPLAINT RULE

S&P's notices of removal do not state any valid basis for removal of the state enforcement actions to federal court, but merely allude to federal defenses.  In an attempt to "federalize" the state cases, S&P offers *Grable* as its means of access to federal court.  As indicated in its prior remand briefing, S&P is hoping to wedge itself into the very narrow exception to the well-pleaded complaint rule established by *Grable*.  For this reason, the States' analysis here will focus on *Grable's* requirements and demonstrate that S&P's *Grable* argument fails because S&P cannot meet its burden of proving the existence of the four required *Grable* factors.

### Overview of *Grable*

*Grable* stands for the proposition that "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues."  *Grable*, 545 U.S. at 312. Under *Grable*, where the claims raised are based on state law, "federal jurisdiction over a state

law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, ___ U.S. ___, 133 S. Ct. 1059, 1065 (2013).  All four of these requirements must be present for a federal court to exercise jurisdiction.  *Id*.  *Grable*, therefore, authorizes removal in only a special and small category of cases.  *See Empire*, 547 U.S. at 701 ("This case cannot be squeezed into the slim category *Grable* exemplifies.").  Notably, the four essential requirements under *Grable* are not present in these State enforcement actions, nor do they fit into the "slim category" of cases for which *Grable* was intended.[7]

The *Grable* Court acknowledged that even a state court lawsuit that could not have been brought in federal court in the first instance could nevertheless give rise to federal question jurisdiction based on "embedded" issues.  *Grable*, 545 U.S. at 312, 314.  The Supreme Court, however, held that in such cases "federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum."  *Id.* at 313.  Moreover, even a case meeting these requirements did not necessarily trigger federal court jurisdiction, as it was "subject to a possible veto," *id.*, rooted in "an assessment of any disruptive portent in exercising federal jurisdiction."  *Id.* at 314.

*Grable* was an action to quiet title brought by the former landowner who argued that the Internal Revenue Service ("IRS") failed to provide him with a proper tax seizure notice as

---

[7]  The States acknowledge that if a substantial federal issue was necessarily raised and capable of resolution in federal court without disrupting comity principles, such federal issue, while illusory, would be "actually disputed."  *Cf. New York v. Shinnecock Indian Nation*, 686 F.3d 133, 138 (2d Cir. 2012) ("It is not enough that the complaint anticipates a federal defense. And this is true even if the parties conceded that the defense is the only disputed issue in the case.") (citations omitted).

required by federal law.  *Id.* at 310-11.  The Supreme Court held that the question of whether the former landowner received the proper IRS notice required an interpretation of the Internal Revenue Code and was thus "an essential element" of the landowner's state quiet title claim, which was "the only legal or factual issue contested in the case."  *Id.* at 315.  Under the circumstances, the Supreme Court determined the federal government had "a direct interest in the availability of a federal forum to vindicate its own administrative action. . . ."  *Id.*

As to the veto of federal jurisdiction that might flow from an assessment of the appropriate balance between state and federal courts, the Supreme Court noted the rarity of state quiet title issues raising contested matters of federal law.  *Id.*  The Court found that the exercise of federal jurisdiction on the facts before it would "portend only a microscopic effect on the federal-state division of labor," *id.*, and "would not materially affect, or threaten to affect, the normal currents of litigation."  *Id.* at 319.  Because the case could not be resolved without an interpretation of the Internal Revenue Code, the Supreme Court held that a removable federal question had been presented.  *Id.* at 319-320.

The contrast between the underlying facts in *Grable* and in this consolidated action could hardly be more stark.  Where the quiet title action in *Grable* expressly identified the federal notice provision the Supreme Court characterized as "an essential element" of the state claim, the States' enforcement actions here focus exclusively on state law causes of action devoid of federal law elements or issues.  Where *Grable* involved an acute federal interest in having the federal notice provision interpreted by federal judges "used to federal tax matters," *id.* at 315, there is no discernible federal interest in having the federal issues raised by S&P resolved in federal court.[8]

---

[8]   The lack of federal interest is indicated by the United States of America's Statement of Interest Supporting Motions to Remand Filed by State Attorneys General, submitted by the U.S.

As noted above, state unfair trade practice cases often intersect at the margins with federally regulated facets of the marketplace, and channeling such cases to federal court would seriously disrupt the existing balance.[9]

Grable provides still further support for the States' remand motion.  The Supreme Court rejected the reasoning of those courts that had concluded that a federal right of action was mandatory for a finding of federal question jurisdiction in removal disputes.  *Id.* at 317-18.  In doing so, however, the Court emphasized that the absence of a federal cause of action, combined with a lack of preemption of state remedies, served as "an important clue" to Congress's conception of the scope of federal jurisdiction.  *Id.* at 318.  Here, both aspects of *Grable*'s "important clue" for drawing any line between federal and state enforcement apply.[10]  *Id.*  In this consolidated action, there is no federal cause of action by which the States could have brought their state law deception claims in federal court in the first instance, and Congress made its intention *not* to preempt such state enforcement actions explicit in CRARA at 15 U.S.C § 78o-

---

Department of Justice in the wake of S&P's removal efforts in several of the State cases.  "The United States has a substantial interest in ensuring that straightforward claims of ordinary defensive preemption under CRARA do not improperly result in removal of properly pleaded state-law claims over which there is no federal-question jurisdiction."  (*See* United States of America's Statement of Interest Supporting Motions to Remand Filed by State Attorneys General 1-2 (Docket No. 24)).  It is also indicated by Congress's express disavowal of state preemption in CRARA, discussed below.

[9]   In assessing the proper balance of federal and state judicial responsibilities, courts are to take into account the states' historically important functions.  *See Gunn*, 133 S. Ct. at 1068 (recognizing the historical role of states in regulating the legal profession); *see also California v. ARC Am. Corp.*, 490 U.S. 93, 101 (1989) ("Given the long history of state common-law and statutory remedies against monopolies and unfair business practices, it is plain that this is an area traditionally regulated by the States.") (footnote omitted).

[10]  The Supreme Court deemed this clue particularly important where, as in *Merrell Dow*, the exercise of federal jurisdiction "would have attracted a horde of original filings and removal cases raising other state claims with embedded federal issues." *Grable*, 545 U.S. at 318.

7(o)(2).

Removal was completely inappropriate here.  S&P claims that this Court has original jurisdiction over the States' enforcement actions because the States' complaints "necessarily raise[] a stated federal issue, actually disputed and substantial."  (*See, e.g., State of Tennessee, ex rel. Robert E. Cooper, Jr., Attorney General and Reporter v. The McGraw-Hill Companies, Inc.*, Case 1:13-cv-04098-JMF) ("*Tennessee v. S&P*"), Not. of Removal ¶2 (Docket No. 1) (quoting *Grable*, 545 U.S. at 314)).  S&P's reliance on *Grable* is misplaced, because *Grable* involves a narrow exception to the well-pleaded complaint rule in cases where state law claims cannot be resolved without the interpretation of a federal statute.  S&P cannot prove that the States' well-pleaded complaints necessarily raise any substantial federal issues, but instead has tried and failed to manufacture federal jurisdiction by asserting federal defenses which S&P then contends raise substantial federal issues.  Furthermore, S&P cannot overcome the principles of comity which provide that the States' enforcement actions should be remanded immediately.

## 1. THE STATES' WELL-PLEADED COMPLAINTS DO NOT NECESSARILY RAISE FEDERAL ISSUES

### a. No federal issues are necessarily raised by S&P's asserted defenses

The States' enforcement actions arise exclusively under their respective state deceptive trade practices laws.  "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar*, 482 U.S. at 392 (citation omitted); *accord Shinnecock*, 686 F.3d at 138; *Marcus v. AT&T Corp.*, 138 F.3d 46, 52 (2d Cir. 1998).

In deciding whether a lawsuit raises issues of federal law capable of creating federal question jurisdiction under 28 U.S.C. § 1331, a controversy arising under federal law or the

12

Constitution "must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal." *Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 113 (1936). A cause of action raises an issue of federal law only when a federal right or immunity is an essential element of the claim. *See Shinnecock*, 686 F.3d at 138 (citing *Gully*, 299 U.S. at 112). "In the 'vast majority' of cases, a 'suit arises under the law that creates the cause of action.'" *West Virginia ex. rel. McGraw v. JPMorgan Chase & Co.*, 842 F. Supp. 2d 984, 999 (S.D.W. Va. 2012) (quoting *Franchise Tax Bd.*, 463 U.S. at 8-9).

The States have alleged only violations of state laws in their enforcement actions. The States' well-pleaded complaints allege that S&P engaged in conduct that violates state deceptive trade practice statutes, by misrepresenting that its credit ratings analysis and subsequent surveillance were independent, objective, and free from any improper business or financial influence. No federal claims are asserted, and no federal claims are raised. None of the States' complaints mention any provision of federal law nor allege that S&P violated a federal statute. Furthermore, S&P has not asserted that the States brought any federal causes of action.

The only federal issues identified by S&P as forming the basis for federal jurisdiction are, as discussed in the next section, nothing more than defenses to the States' state law claims. As previously noted, it is settled law that federal defenses, including the defense of preemption, do not give rise to federal question jurisdiction. *See Caterpillar*, 482 U.S. at 393; *In re: Oxycontin*, 821 F. Supp. 2d at 596 ("Federal defenses are also insufficient to confer federal jurisdiction[.]") (citation omitted); *Greenwich*, 654 F. Supp. 2d at 203 ("A federal defense has never been sufficient for federal question jurisdiction.") (citing *Franchise Tax Bd.*, 462 U.S. at 2). Moreover, "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow*, 478 U.S. at 813.

13

Courts have already found that S&P's affirmative defenses do not "necessarily raise" any federal issues on the face of well-pleaded complaints containing exclusively state law claims. Notably, in remanding Illinois's enforcement action against S&P, the district court observed that "*Grable* does not alter the rule that a potential federal defense is not enough to create federal jurisdiction." *Illinois v. McGraw-Hill Cos., Inc.*, No. 13 C 1725, 2013 WL 1874279, at *5 (N.D. Ill. May 2, 2013) (quoting *Chicago Tribune Co. v. Bd. of Trs. of Univ. of Illinois*, 680 F.3d 1001, 1003 (7th Cir. 2012)).  Having found that S&P failed to carry its burden establishing that federal issues were necessarily raised, the court did not address the other *Grable* factors, since "all four [*Grable*] requirements must be met" to support federal jurisdiction.  *Id*. (citing *Gunn*, 133 S. Ct. at 1065).

The case of *New York v. First Am. Corp.*, No. 07 Civ. 10397 (LTS) (HP), 2008 WL 2676618 (S.D.N.Y. July 8, 2008), is also instructive.  The New York Attorney General brought an enforcement action under its state deceptive trade practices laws, alleging that the defendants misrepresented to the public that the appraisals it provided were independent and objective while actually allowing its largest client to hand-pick appraisers who provided appraisal values high enough to permit the client's loans to close.  *Id*. at *1.  The defendants removed the action, asserting under *Grable* that New York necessarily raised a federal issue by contending that the defendants violated uniform appraisal standards which are incorporated into New York state and federal law.  *Id*. at *3.  The court rejected that argument:

> The fact that the Complaint includes allegations that Defendants' conduct violates federal laws and regulations does not "necessarily" raise a federal issue, because the state law violations and allegedly fraudulent practices described in the Complaint could, if proven, support the relief sought without proof of distinct violations of the cited federal provisions.  Although the Attorney General could ultimately prevail on the asserted claims by proving a violation of federal law, he need not do so in order to succeed.

14

*Id*.  Because the defendants failed to establish federal jurisdiction, the court remanded the action.

*Id*. at *4.  The facts in this consolidated action provide even more compelling reasons than the

facts in *First American* to remand.

> ### b.    S&P's First Amendment and CRARA preemption arguments are nothing more than defenses to the States' claims, which cannot serve as bases for federal jurisdiction

Neither the First Amendment nor CRARA preemption are raised on the face of the

States' enforcement actions.  The States' actions consistently do not challenge S&P's judgment

in rating methodologies as applied to any particular structured finance security.  For example,

consider the pertinent allegations of Tennessee's complaint:

> 12.    This lawsuit does not challenge S&P's judgment regarding which rating methodology to use, or how to apply it, when rating any specific structured finance security.  Similarly, the State's lawsuit is not brought for the purpose of demonstrating that any particular S&P rating on a structured finance security was incorrect (*i.e.*, too high or too low).
>
> 13.    Rather, the State's lawsuit takes issue with the fact that S&P represented that its analysis of structured finance securities was independent, objective and, as represented in its Code of Conduct, "not . . . affected by the existence of, or potential for, a business relationship between [S&P] . . . and the issuer . . . or any other party, or the non-existence of any such relationship."  This representation by S&P was false.
>
> 14.    By misrepresenting and / or omitting factors it considered when analyzing structured finance securities, S&P offered a good or service that was materially different from what it purported to provide to the marketplace, *i.e.*, an independent and objective analysis of credit risk.

(*Tennessee v. S&P*, Case: 1:13-cv-04098-JMF, Compl. for Perm. Injunctive and Other

Relief ¶¶ 12-14 (Docket No. 1-1)).  Instead, the States focus their well-pleaded

complaints on the misrepresentations of independence and objectivity made by S&P in

connection with the credit rating services it provides, not the actual ratings.

Nothing on the face of the States' complaints requires this Court to address the First Amendment or CRARA preemption. "If it acts like a defense and sounds like a defense and quacks like a defense, then it's a defense." *Citigroup, Inc. v. Wachovia Corp.*, 613 F. Supp. 2d 485, 487 (S.D.N.Y. 2009); *see also Carr v. Axelrod*, 798 F. Supp. 168, 173 (S.D.N.Y. 1992) (rejecting argument that the Attorney General's claims required "a construction of the federal Constitution as it applies to non-commercial speech" and finding that "this construction is raised by the defense, not by the complaint in the enforcement proceeding."). Consequently, "Defendants' argument that S&P's statements constitute protected speech under the First Amendment is likewise an affirmative defense[.]" *Illinois v. McGraw-Hill*, 2013 WL 1874279, at *5.[11]   S&P is free to raise such a defense in state court, but this federal defense does not support removal.[12]

> **c.    S&P's First Amendment and CRARA preemption arguments have already been rejected by other courts**

S&P has already failed in its attempts to persuade the state courts in Connecticut and Illinois that the First Amendment and CRARA preemption are more than affirmative defenses.

---

[11]   *See also Greenwich*, 654 F.Supp.2d at 202 ("If defendants had never raised [the Truth in Lending Act] as an issue in this case, plaintiffs would not have required an interpretation of federal law in order to succeed on their claim.").

[12]   Lead counsel for S&P, Floyd Abrams, has expressed the view that there is no genuine issue regarding protected speech in the federal enforcement action:

> I don't have any magic First Amendment wand in my pocket for this one . . . .
> It's not a First Amendment case.  The government is alleging that S&P didn't
> believe what it said; the First Amendment doesn't protect against that.

Sarika Gangar, *S&P Won't Employ First Amendment Defense in U.S. Ratings Lawsuit*, Bloomberg.com (Feb. 5, 2013), http://www.bloomberg.com/news/2013-02-05/s-p-won-t-employ-first-amendment-defense-in-u-s-ratings-lawsuit.html.

In both enforcement actions against S&P, which were removed by S&P but remanded back to their respective state courts prior to transfer and consolidation of this action, S&P moved to dismiss the complaints in state court.  In both cases, the state courts in Illinois and Connecticut rejected these as grounds to dismiss the complaints.

The Illinois court denied S&P's motion to dismiss based on Illinois precedent that, "[s]ince the [Illinois Consumer Fraud Act] prohibits only such speech as amounts to fraudulent or deceptive practices, i.e., false or misleading advertising, it can affect only speech that is by definition outside the ambit of first amendment protection, and within the scope of permissible State regulation."  *Illinois v. McGraw-Hill Cos., Inc.*, No. 12 CH 02535, 2012 WL 5440768, at *10-11 (Ill. Cir. Ct. Nov. 7, 2012) (quoting *Scott v. Ass'n for Childbirth at Home, Int'l*, 430 N.E.2d 1012, 1016 (Ill. 1981)).  The Illinois court further stated that "[t]his is precisely what the State's complaint alleges and, therefore, the First Amendment does not pose a bar to the claims asserted."  *Id*. at *11.

The Connecticut court similarly held:

> Finally, the defendants argue that the statements upon which the State's claim is based constitute part of their rating opinions which are protected speech under the First Amendment.  The court disagrees.  The State is not challenging the substance of [the defendants'] ratings.  Instead, it claims that [the defendants'] statements about [their] independence and objectivity and the policies and procedures [they] claim[] to follow to protect those qualities are demonstrably false.  While the actual opinions rendered by [the defendants] may enjoy First Amendment protection, that protection does not give the defendants license to misrepresent to consumers the manner in which they operate their business or arrive at their opinions.

*Connecticut v. Moody's Corp*., No. X04HHDCV106008836S, 2012 WL 2149408, at *9 (Conn. Super. Ct. May 10, 2012) (cited in *Connecticut v. McGraw-Hill Cos., Inc.*, No. 3:13-cv-311 (SRU), 2013 WL 1759864, at *1 n.2 (D. Conn. Apr. 24, 2013)).

After its motions to dismiss were denied, S&P restated the application of CRARA and the First Amendment as affirmative defenses in their answers.  *See Illinois v. McGraw-Hill*, 2013 WL 1874279, at *3 ("[A]fter the state court denied their motion to dismiss, defendants filed an answer to the State's complaint in which they asserted, as affirmative defenses, federal preemption under CRARA as well as the application of the First Amendment."); *Connecticut v. McGraw-Hill*, 2013 WL 1759864, at *4 ("Indeed, the defendants do not dispute that they previously raised in state court substantially the same CRARA- and First Amendment-related issues upon which their belated removal petition now relies.").  Likewise, in a number of the cases where S&P has filed answers to the States' complaints, S&P has asserted these same arguments as, unsurprisingly, affirmative defenses.[13]

Therefore, *Grable's* first requirement is not met because the States' well-pleaded complaints do not "necessarily raise" any issues of federal law, nor do any of S&P's asserted affirmative defenses give rise to any federal issues on the face of these complaints.

## 2.    THE STATES' WELL-PLEADED COMPLAINTS DO NOT RAISE SUBSTANTIAL FEDERAL ISSUES

In its notices of removal, S&P contends that "adjudicating the claims that each of these State enforcement actions seeks to assert calls for courts to make judicial determinations concerning the scope of CRARA, . . . state enforcement powers, the Commerce Clause and the First Amendment."  (*See, e.g., Tennessee v. S&P*, Case 1:13-cv-04098-JMF, Not. of Removal ¶ 8 (Docket No. 1)).  S&P further asserts that these enforcement actions require "interpretation of the allocation of enforcement power between the states and the SEC under CRARA's framework. . . ."  (*Id*. ¶ 8).  The States disagree with that assertion, and instead contend that even if there were a

---

[13]    (*See*, *e.g.*, *S&P v. Tennessee* Answer, Case 1:13-cv-04098-JMF (Docket No. 25)).

need for a court to interpret the scope of CRARA or the First Amendment, it is likewise insufficient to generate federal jurisdiction.

"As a general rule, a suit seeking recovery under state law is not transformed into a suit 'arising under' federal law merely because, to resolve it, the court may need to interpret federal law." *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 271 (2d Cir. 2005) (quoting *Gully*, 299 U.S. at 115) ("Not every question of federal law emerging in a suit is proof that a federal law is the basis of the suit."); *see also Veneruso*, 2013 WL 1187445, at *6 (quoting *Merrell Dow*, 478 U.S. at 807); *Cuomo v. Dreamland Amusements, Inc.*, Nos. 08 Civ. 7100(JGK), 08 Civ. 6321(JGK), 2008 WL 4369270, at *3 (S.D.N.Y. Sep. 22, 2008).

### a.    S&P's CRARA arguments are nothing more than a defense to the States' claims, not a substantial basis for federal jurisdiction

S&P asserts that resolution of the States' claims requires a federal court to determine whether its conduct is the subject of federal regulation as a prima facie element of the States' enforcement actions.  S&P contends that the purported federal issues that it asserts are substantial because S&P is regulated by the SEC under a comprehensive federal regulatory scheme involving securities.  This argument fails, however, because "[c]ourts have regularly found that cases implicating federal issues in areas of extensive federal regulation are still not subject to *Grable* jurisdiction."  *JPMorgan Chase*, 842 F. Supp. 2d at 1001.

### i.    A plain reading of CRARA shows that no preemption exists sufficient to create federal jurisdiction

Congress did not enact CRARA to insulate credit rating agencies such as S&P from liability for their wrongdoing but instead "[t]o improve ratings quality for the protection of investors and in the public interest by fostering accountability, transparency, and competition in the credit rating agency industry."  Pub. L. No. 109-291, 120 Stat. 1327, 1327 (2006).  CRARA

became effective June 26, 2007, and many of the misrepresentations alleged by the States occurred prior to that date.[14]  Notably, the SEC's "exclusive authority," as labeled by S&P in its notices of removal, is limited to the <u>registration</u> of credit rating agencies as Nationally Recognized Statistical Rating Organizations ("NRSRO") and enforcement of CRARA itself.  15 U.S.C. § 78o-7.[15]  S&P misconstrues this provision of CRARA which only provides that the States may not "regulate the substance of credit ratings or the procedures and methodologies by which any NRSRO determines credit ratings."  15 U.S.C. § 78o-7(c)(2).  The States do not seek to regulate S&P's ratings or its methodologies nor do the States seek to interfere with the registration of NRSROs in any way.  The States seek to enjoin and recover for S&P's past misrepresentations and to prevent future deceptive conduct.

    S&P has previously conceded that CRARA does not completely preempt the claims raised by the States and disavowed any reliance on that doctrine.  (*See, e.g.*, *Tennessee v. S&P*, Case 1:13-cv-04098-JMF, Def. Mem. in Opp'n. to Pl.'s Mot. for Remand and for Costs 3 (Docket No. 30) ("Defendants do not premise federal jurisdiction here on complete

---

[14]  CRARA is not retroactive.  *See* P.L. 109-291, Sec. (p); *see also City of New York v. Permanent Mission of India to the United Nations*, 618 F.3d 172, 193 (2d Cir. 2010) ("'Retroactivity is not favored in the law.' Courts, accordingly, have regularly employed a presumption against retroactivity as a default rule for statutory interpretation.") (internal citation omitted).  Therefore, even if the Court were to conclude that CRARA preempts the States' enforcement actions, the States' claims regarding deceptive conduct prior to June 26, 2007 would be unaffected.

[15]  This limitation on the SEC's exclusive authority was recognized when CRARA was passed.  *See* Statement of Rep. Kanjorski, Cong. Rec. H7569 (Sept. 27, 2006) (stating "the Senate added a preemption [amendment] that gives exclusive authority to the Securities and Exchange Commission to register, license, or qualify [] a nationally recognized agency except in cases of fraud.").

preemption.")).[16]  Nor could S&P justifiably rely on complete preemption as a basis for federal

jurisdiction.  Indeed, CRARA provides:

> Nothing in this subsection prohibits the securities commission (or any agency or
> office performing like functions) of any State from investigating and bringing an
> enforcement action with respect to fraud or deceit against any nationally
> recognized statistical rating organization or person associated with a nationally
> recognized statistical rating organization.

15 U.S.C. § 78o-7(o)(2).  Congress could hardly provide a more explicit recognition of the roles

that the States play in prohibiting fraudulent conduct by NRSROs.

S&P has asserted that CRARA has established a "sound balance" for the regulation of

credit rating agencies.  (*See, e.g.*, *Tennessee v. S&P*, Case 1:13-cv-04098-JMF, Def.'s Mem. in

Opp. to Pl.'s Mot. for Remand and for Costs 6 (Docket No. 30)).  Although the above-cited

provision is a key feature of the congressionally-prescribed balance between the authority of the

SEC and the right of the States to bring enforcement actions such as these, any reference to this

specific carve-out of actions for fraud and deceit is conspicuously absent from any of S&P's

arguments to date.

Any preemption, other than complete preemption, has been specifically recognized by the

Supreme Court as insufficient to create federal jurisdiction.  *Caterpillar*, 482 U.S. at 393.  S&P

contends that the "extensive" nature of CRARA vests jurisdiction in this Court and prevents the

States from enforcing their own laws against S&P, as the effect might be to undermine a national

regulatory regime.  (*See, e.g., Tennessee v. S&P*, Case 1:13-cv-04098-JMF, Not. of Removal,

(Docket No. 1)).  This is merely an ordinary preemption argument, and "[a]nything short of

---

[16]  "Under the complete-preemption doctrine, certain federal statutes are construed to have
such 'extraordinary' preemptive force that state-law claims coming within the scope of the
federal statute are transformed, for jurisdictional purposes, into federal claims-i.e., completely
preempted."  *Sullivan*, 424 F.3d at 272.

complete preemption is merely a defense and does not justify removal." *Veneruso*, 2013 WL 1187445, at *3 n.1 (citation omitted).

### ii.    Courts have already concluded that CRARA preemption does not apply to these enforcement actions

Federal courts have already concluded that CRARA does not have the preemptive effect S&P asserts.  As the court stated in *Anschutz Corp. v. Merrill Lynch and Co. Inc.*, 785 F. Supp. 2d 799, 829-30 (N.D. Cal. 2011):

> [T]here is no indication in the text of the [CRARA] or its legislative history that Congress intended to wipe out *all* state law causes of action against rating agencies.  The Authorization Provision gives the SEC exclusive authority to enforce the provisions of the CRARA and rules issued by the SEC, but there is no language to indicate that the SEC's exclusive authority extends to enforcement of claims that arise from sources *other* than the CRARA. . . . [P]laintiff seeks to hold the Rating Agencies liable for purported misrepresentations that allegedly would not have occurred if the Agencies had followed their own published procedures and methodologies.  There is nothing in either the text of the statute or the legislative history to establish that Congress intended to preempt a . . . misrepresentation claim based in part or in whole on allegations that credit agencies failed to follow their own practices.

(citations and footnotes omitted); *see also Genesee County Employees' Ret. Sys. v. Thornburg Mortg. Sec. Trust*, 825 F. Supp. 2d 1082, 1256 (D.N.M. 2011) (misrepresentation claims alleged by class of investors against credit rating agencies under New Mexico Securities Act not preempted by CRARA).

Moreover, courts have already determined that CRARA does not preempt the deceptive trade practice claims at issue here.  The Connecticut state court held:

> CRARA explicitly preserves the right to bring actions against rating agencies for violation of antitrust laws, including the FTC Act. 15 U.S.C. § 78o-7(i)(2).  In addition, it explicitly reserves to the states the right to bring enforcement actions against rating agencies for fraud and deceit.  15 U.S.C. § 78o-7(o)(2).  Such

provisions are flatly inconsistent with any notion that CRARA was intended to
preempt claims like that brought here.

*Connecticut v. Moody's Corp.*, 2012 WL 2149408, at *9 (reasoning adopted by *Connecticut v.
McGraw-Hill Cos*., No. HHDCV106008838S, slip op. at p. 1 (Conn. Super. Ct. May 10, 2012)
(attached as Exhibit B)).  Likewise, the Illinois state court found "the claims asserted by the State
in this case do not contravene or in any way impact the SEC's exclusive authority under
CRARA[.]"  *Illinois v. McGraw-Hill*, 2012 WL 5440768, at *10.

      Despite the explicit authority for the States to bring these enforcement actions, S&P
contends that federal jurisdiction exists because the States' complaints require this Court to
interpret the scope of CRARA and threaten to undermine CRARA's statutory scheme.  Any
court interpretation of CRARA in these cases, however, need only be done in the context of S&P
asserting CRARA as an affirmative defense to the States' claims.  Even if CRARA does
influence the Court's consideration of the States' complaints, "the mere 'influence of federal law
on the outcome of a . . . suit is not enough to support arising-under jurisdiction.'"  *Illinois v.
McGraw-Hill*, 2013 WL 1874279, at *4 (quoting *Bennett v. Southwest Airlines Co*., 484 F.3d
907, 910 (7th Cir. 2007)).  Indeed, "[t]he most that one can say is that a question of federal law is
lurking in the background. . . . A dispute so doubtful and conjectural, to [sic] far removed from
plain necessity, is unavailing to extinguish the jurisdiction of the states."  *Gully*, 299 U.S. at 117.

      S&P fears a "patchwork of state injunctions" which could alter the "carefully crafted
regulatory framework" of CRARA.  (*Tennessee v. S&P*, Case 1:13-cv-04098-JMF, Not. of
Removal ¶ 11 (Docket No. 1)).  "In other words, the most that can be said about [Defendant's]
invocation of federal law is that there is some *possibility* that federal law may shape or even
limit the remedy that Plaintiff may obtain."  *Veneruso*, 2013 WL 1187445, at *10.  This

possibility, even if true, does not create federal subject matter jurisdiction. S&P's reference to

the preemptive force of CRARA must remain subject to the well-established principle that a

federal defense does not create removal jurisdiction.

      **b.**      **S&P's First Amendment defense does not raise a substantial federal issue**

The First Amendment (even if necessarily raised, which the States contend it is not) does

not meet *Grable*'s requirement of substantiality.  S&P cannot claim First Amendment protection

for false, misleading, or deceptive commercial speech. *See Telemarketing Assocs.*, 538 U.S. at

623-24 (First Amendment does not bar fraud actions by the states where the defendants make

false or misleading representations); *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 68

(1983) ("For commercial speech to receive such [First Amendment] protection, 'it at least must

concern lawful activity and not be misleading.'") (quoting *Central Hudson Gas & Elec. Corp. v.

Public Serv. Comm'n of New York*, 447 U.S. 557, 563 (1980) ("The government may ban forms

of communication more likely to deceive the public than inform it[.]") (citations omitted)).

      **c.**      **Substantiality does not emerge merely because multiple States filed enforcement actions**

S&P also suggests that its federal defenses became substantial because over fifteen States

filed enforcement actions against S&P.  S&P repeatedly notes the "coordinated" efforts of the

several states that have brought similar actions and claims that this "bears directly on the impact

of the cases on well-established federal interests."  (*Tennessee v. S&P*, Case 1:13-cv-04098-JMF,

Not. of Removal ¶¶ 12, 13 (Docket No. 1)).  However, S&P does not cite any authority, nor are

the States aware of any, which has ever held that federal question jurisdiction may somehow

arise simply because multiple states bring complaints alleging violations of the respective laws

of those states.  Substantiality under *Grable* does not depend on a defendant facing multiple

enforcement actions.  *See In re Avandia Mktg. Sales Practices and Prods. Liab. Litig.*, Nos. 11-

2915, 11-3521, 2012 WL 1137097, at *2 (E.D. Pa. Apr. 4, 2012) (remanding and finding no

*Grable* jurisdiction over state fraud claims filed by two attorneys general); *In re Countrywide*

*Fin. Corp. Mortg. Mktg. and Sales Practices Litig.*, Nos. 08md1988 DMS (LSP), 08cv1903

DMS (LSP), 2008 WL 5450351, *2-5 (S.D. Cal. Dec. 30, 2008) (remanding and finding no

*Grable* jurisdiction over one attorney general's state fraud enforcement action filed

contemporaneously with enforcement actions by another attorney general and a city attorney).

 Whether any other state seeks to hold S&P responsible for its misrepresentations is

simply not relevant to the question of whether this Court has jurisdiction to retain a case brought

by a particular state. Substantiality instead turns on whether any federal issue raised in an

individual state claim is of such substantial import to the federal system as a whole that federal

jurisdiction is warranted. Reaching federal court jurisdiction does not turn on a simple numbers

game by adding up how many state attorney general enforcement actions are filed at any given

point in time. *See Connecticut v. McGraw-Hill*, 2013 WL 1759864, at *4 n.7 (characterizing

S&P's argument that "Connecticut's action was unremovable at the outset, but then became

removable later, once a critical number of other states (i.e., more than three) filed substantially-

similar enforcement actions" as "perplexing, to say the least."); *Illinois v. McGraw-Hill*, 2013

WL 1874279, at *3 ("[D]efendants essentially take the position that it was first ascertainable that

the State's claims were removable only when . . . it became apparent that this case was part of a

'coordinated wave' of state court suits attacking the independence of S&P's credit rating process.

. . . Defendants' argument does not withstand scrutiny.").

 Whether any state has coordinated its enforcement action with any other sovereign is

likewise irrelevant to the determination of federal jurisdiction. As discussed above, S&P has

already failed to dismiss the Connecticut and Illinois enforcement actions on CRARA preemption

and First Amendment grounds and the number of pending enforcement actions is not legally

relevant.  In sum, there are no substantial federal issues here warranting federal jurisdiction in the

States' enforcement actions.

### 3.  PRINCIPLES OF COMITY FAVOR STATE COURTS INTERPRETING STATE LAW ENFORCEMENT PROCEEDINGS IN STATE COURTS

The principles of comity prevent S&P from meeting the fourth required *Grable* element

while attempting to strip a key facet of sovereignty from the States: the ability of state

authorities to address violations of state law in state court in an area of traditional state

authority.

The importance of preserving the principles of comity and federalism is intensified in

cases brought by states acting through their Attorneys General.  In *New York v. Dell, Inc.*, 514

F. Supp. 2d 397, 398 (N.D.N.Y. 2007), the New York Attorney General sued Dell for fraud

and deception.  Dell removed the case, arguing that New York's allegations that Dell violated

the Equal Credit Opportunity Act and the Fair Credit Reporting Act supported federal

jurisdiction.  *Id.*  The court disagreed, holding that "[t]he principles of comity and federalism

also prevent the exercise of federal jurisdiction over this case.  This case is almost entirely an

issue of state law and federal law serves only as an alternate theory, unnecessary to the

resolution of the case." *Id.* at 401.  The court specifically noted that "[t]his principle is even

more relevant when, as here, the case was brought by the state itself." *Id.* (citing *Franchise Tax

Bd.*, 463 U.S. at 23).  The court ultimately found that "refusing to remand this case would

unreasonably strip the state of judicial responsibility."  *Id.*

Numerous other federal courts have declined to exercise federal subject matter

jurisdiction when doing so would contravene principles of comity as applied to a *single* state

enforcement proceeding, let alone multiple independent state enforcement actions.  For

example, in *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 676 (9th Cir. 2012), the Ninth Circuit remanded the Nevada Attorney General's enforcement action noting that "[s]tate courts frequently handle state-law consumer protection suits that refer to or are predicated on standards set forth in federal statutes" and "[e]xercising federal jurisdiction over any state law claim that references a federal consumer protection statute would 'herald[] a potentially enormous shift of traditionally state cases into federal courts[.]'" (quoting *Grable*, 545 U.S. at 319).  Likewise, in *West Virginia ex. rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 178 (4th Cir. 2011), the Fourth Circuit remanded the West Virginia Attorney General's state consumer protection case (for lack of jurisdiction under CAFA) despite the defendant's claim that the case was of "national importance," because states acting in their own courts to vindicate their own laws give rise to "the 'claim of sovereign protection from removal [] in its most powerful form.'  Such sovereign protection [from removal] derives from our constitutional structure and serves the important function of preserving the 'dignity' to which states are entitled 'as residuary sovereigns and joint participants in the governance of the Nation.'" (citations omitted); *see also In re: Vioxx Prods. Liab. Litig.*, 843 F. Supp. 2d 654, 669 (E.D. La. 2012) (remanding attorney general consumer protection claim because "expanding federal-question jurisdiction to encompass this case would have an exponentially greater effect on the federal-state division of labor than the unusual circumstances of *Grable*."); *JPMorgan Chase & Co.*, 842 F. Supp.2d at 1002 (remanding and finding that "state consumer protection actions are not 'creatures of federal law,' and the State has a significant interest . . . in retaining jurisdiction over this type of action.").

Finding federal jurisdiction in the States' enforcement actions is not "consistent with congressional judgment about the sound division of labor between state and federal courts[.]"

27

*Grable*, 545 U.S. at 313.  "[C]onsiderations of comity make us reluctant to snatch cases which a

State has brought from the courts of that State, unless some clear rule demands it." *Franchise

Tax Board*, 463 U.S. at 21 n. 22.  "Judicial scrutiny is especially important 'in the context of

removal, where considerations of comity play an important role.'"  *Veneruso*, 2013 WL

1187445, at *2 (quoting *Johnston v. St. Paul Fire and Marine Ins. Co*., 134 F. Supp. 2d 879, 880

(E.D. Mich. 2001)).

      The discretionary exercise of federal jurisdiction in this matter would be unnecessarily

disruptive, *Franchise Tax Bd.*, 463 U.S. at 21 n.22, and it would serve no congressional policy

for a federal court to seize control over the States' sovereign enforcement actions.  *Templeton

Bd. of Sewer Comm'rs v. Am. Tissue Mills of Mass., Inc.*, 352 F.3d 33, 40-41 (1st Cir. 2003)

(quoting *Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799, 807 (4th Cir. 1996)) (assessment of

jurisdiction must be "informed by a sensitive judgment about whether the existence of federal

judicial power is both appropriate and pragmatic.  At bottom, we must determine whether the

dispute is one that Congress intended federal courts to resolve. . . .") (internal citations omitted)).

      There is no indication Congress intended federal courts to adjudicate such sovereign

enforcement actions.  Such an exercise of federal jurisdiction would contradict the express

dictates of the state legislatures regarding the courts in which such proceedings are to be

adjudicated.  Comity and respect for state courts require recognition that state courts are fully

capable of addressing the sort of federal defenses that S&P raises here. *Cf. Pennzoil Co. v.

Texaco Inc.*, 481 U.S. 1, 14 (1987) (noting in the context of *Younger* abstention that "proper

respect for the ability of state courts to resolve federal questions presented in state court litigation

mandates that the federal court stay its hand.").  Most importantly, Congress has established the

proper division of labor under CRARA by preserving the rights of the States to bring actions

against credit rating agencies for fraud or deceit.  15 U.S.C. § 78o-7(o)(2).

The Attorneys General of the States appearing in this action are statutorily tasked with enforcement of their respective state deceptive trade practices laws.  The Attorneys General have brought these actions on behalf of their respective State in their capacities as their State's chief legal officers.  Under these circumstances, the balance of federal and state judicial responsibilities recognized in *Grable* weighs in favor of adjudication of these state law issues in state courts.

### B.  S&P WAIVED THE RIGHT OF REMOVAL OF NORTH CAROLINA'S CASE

A state court defendant may "lose or waive the right to remove a case to a federal court by taking some substantial offensive or defensive action in the state court action indicating a willingness to litigate in that tribunal before filing a notice of removal with the federal court. . . ." *MG Bldg. Materials, Ltd. v. Paychex, Inc*., 841 F. Supp. 2d 740, 752 (W.D.N.Y. 2012) (quoting *Yusefzadeh v. Nelson, Mullins, Riley & Scarborough, LLP*, 365 F.3d 1244, 1246 (11th Cir. 2004)).[17]  The determination as to whether a party's "active participation" in state court proceedings amounts to a waiver should be evaluated on a "case-by-case" basis.  *Id*.  Waivers have been found when defendants have filed permissive counterclaims and cross-claims before petitioning for removal, based partly on the fact that in such an action the party is voluntarily invoking the jurisdiction of the court.  *See Isaacs v. Group Health, Inc.*, 668 F. Supp. 306, 308-09 (S.D.N.Y. 1987).

---

[17]  Fourth Circuit decisions apply a similar analysis of the waiver issue.  *See Grubb v. Donegal Mut. Ins. Co.*, 935 F.2d 57, 59 (4th Cir. 1991) (the right of removal is considered to be waived when the defendant evinces a "clear and unequivocal" intent to remain in state court); *Westwood v. Fronk*, 177 F. Supp. 2d 536, 541 (N.D. W. Va. 2001) (the "volitional nature" of the defendant's action should be considered in determining whether the defendant intended to remain in state court).

North Carolina law permits parties to designate a civil action as a mandatory complex business case by filing a Notice of Designation in the Superior Court in which the action was originally filed.  N.C. Gen. Stat. § 7A-45.4(b) (2013).  After the notice has been submitted, the Chief Justice of the North Carolina Supreme Court must approve the transfer to the North Carolina Business Court, and then assign the case to a Business Court Judge.  *Id.*  The North Carolina Business Court has concluded that filing a Notice of Designation constitutes a "general appearance for the purpose of personal jurisdiction" and is similar to making a motion as such an action "has invoked the authority of the Court."  *Covenant Equip. Corp. v. Forklift Pro, Inc.*, No. 07 CVS 21932, 2008 WL 1945973, at *5, 7 (N.C. Super. Ct. May 1, 2008).

North Carolina filed its complaint against S&P in Wake County, North Carolina Superior Court on February 5, 2013.  Thirteen days later, on February 18, 2013, S&P filed a Notice of Designation of the action as a mandatory complex business case, asserting that the case "should be adjudicated in the Business Court."  (*See* S&P's Notice of Designation 1-2 (attached as Exhibit C)).  S&P further asserted that the North Carolina Business Court's "expert and skilled application of the applicable law" was required due to the "complex nature of the allegations in the Complaint"  and that the "assignment of this case to Business Court at this time will not waste judicial resources or otherwise be inconsistent with the interests of justice."  (*See* Notice at 2-3).  The Chief Justice of the North Carolina Supreme Court approved the Designation, and then assigned the matter to the Chief Special Superior Court Judge for Complex Business cases for further proceedings.  (*See* Order of Designation 1 (Feb. 18, 2013) (attached as Exhibit D)).  Sixteen days later, on March 6, 2013, S&P removed North Carolina's enforcement action to the

Eastern District of North Carolina.[18]

By filing the Notice of Designation, S&P took a substantial and affirmative action that demonstrated a willingness to litigate in state court. The filing dealt with the substantive issues of the case, and was not compelled by any court or procedural requirement. S&P thus voluntarily elected to submit itself to the jurisdiction of the North Carolina Business Court. Therefore, North Carolina asserts that S&P waived its right to remove North Carolina's enforcement action to federal court.

### C. COSTS AND ATTORNEYS' FEES SHOULD BE AWARDED TO THE STATES BECAUSE THERE IS NO OBJECTIVELY REASONABLE BASIS FOR S&P'S REMOVAL OF THE STATES' ENFORCEMENT ACTIONS

S&P lacked an objectively reasonable basis when removing the States' enforcement actions. "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). A court may exercise its discretion to award fees and costs "where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). The "objectively reasonable" standard recognizes the purposes of the removal statute—to deter improper removals sought merely to prolong and delay the litigation and impose costs on the opposing party. *Id.* at 140. Such awards of fees and costs "do not require a showing of bad faith removal," but merely the lack of an objectively reasonable basis. *Ins. Co.*

---

[18]  The amount of time between S&P filing its Notice of Designation to the North Carolina Business Court and filing its notice of removal may also be relevant on the issue of S&P's intent to remain in state court. *See Va. Beach Resort & Conf. Center Hotel Ass'n Condo. v. Certain Interested Underwriters at Lloyd's*, 812 F. Supp. 2d 762, 767 (E.D. Va. 2011) (Factoring in an eight-day period between the filing of a voluntary counterclaim and a notice of removal as an issue relevant to determining intent).

*of the State of Pa. v. Waterfield*, 371 F. Supp. 2d 146, 151 (D. Conn. 2005) (citing *Morgan Guar.*
*Trust Co. of New York v. Republic of Palau*, 971 F. 2d 917, 923 (2d Cir. 1992)).

Case law and S&P's lack of success in similar cases make clear that S&P's removal lacks

any reasonable basis to support federal subject matter jurisdiction. S&P's shifting arguments for

removal and its reliance on dubious, unsupported grounds suggest that S&P seeks only to prolong

this litigation and impose additional costs on the States—improper purposes that the Court should

deter by awarding the States their costs and fees under § 1447(c). The States should not be

required to endure improper removal, months of delay, and a drain on limited resources each time

S&P comes up with a new variation of its removal arguments. The purpose of the "objectively

reasonable" standard would be served here by assessing costs against S&P so as to deter S&P from

accomplishing improper removals in the future.

## VII.    CONCLUSION

"It is tempting to find federal jurisdiction every time a multi-billion dollar case with

national implications arrives at the doorstep of a federal court." *Greenwich*, 654 F. Supp. 2d at

204. "[S]uccumbing to that temptation is barred by the careful limits Congress has placed on the

jurisdictional reach of federal courts. With few exceptions, the doors to federal court do not

swing open merely because a defendant has a national presence or is alleged to have committed

wrongdoing that is national in scope." *Connecticut v. McGraw-Hill*, 2013 WL 1759864, at *5.

None of those "few exceptions" is present here.

S&P has failed to demonstrate that the four factors required under *Grable* are present and

federal courts do not have original jurisdiction over the States' enforcement actions brought under

their state deceptive trade practice laws. The States' well-pleaded complaints assert exclusively

state law causes of action, and S&P cannot craft federal jurisdiction from affirmative defenses.

32

The States' complaints do not "necessarily raise" any federal issues; such issues, if raised, are not substantial, and retention of these cases would disrupt the sound division of labor between state and federal courts.  The States request respectfully that this Court grant the States' motions to remand and transfer these actions to their respective state courts.

Respectfully submitted,


OFFICE OF THE TENNESSEE ATTORNEY GENERAL

 /s/ Olha N.M. Rybakoff
Olha N.M. Rybakoff (TN BPR No. 24254)
Jeffrey L. Hill (TN BPR No. 16731)
Jennifer E. Peacock (TN BPR No. 22227)
CONSUMER ADVOCATE AND PROTECTION DIVISION
425 5th Avenue North
P.O. Box 20207
Nashville, Tennessee 37202-0207
Telephone: (615) 532-2590
Fax: (615) 532-2910
Email: olha.rybakoff@ag.tn.gov
Email: jeff.hill@ag.tn.gov
Email: jennifer.peacock@ag.tn.gov

*Lead Counsel for Moving Plaintiff States Arizona, Arkansas, Colorado, Delaware, Idaho, Indiana, Iowa, Maine, Mississippi, Missouri, North Carolina, Pennsylvania, South Carolina, Tennessee, and Washington*

DATED:  August 2, 3013

CERTIFICATE OF SERVICE

I, OLHA N.M. RYBAKOFF, hereby certify that on August 2, 2013, I electronically

filed the attached CONSOLIDATED BRIEF IN SUPPORT OF PLAINTIFF STATES'

MOTIONS TO REMAND and EXHIBITS A – D thereto in 13-MD-2446 (JMF) using CM/ECF,

which will send notification of such filing to all counsel of record in all actions hereto.


 /s/ Olha N.M. Rybakoff
OLHA N.M. RYBAKOFF (TN BPR # 24254)

*Lead Counsel for Moving Plaintiff States Arizona, Arkansas, Colorado, Delaware, Idaho, Indiana, Iowa, Maine, Mississippi, Missouri, North Carolina, Pennsylvania, South Carolina, Tennessee, and Washington*

34